FRANCIS V. MANION et al., Plaintiffs, and ROBYN G. HAG-GARD et al., Respondents, v PAN AMERICAN WORLD AIRWAYS, INC., Appellant.

First Department, May 12, 1981

APPEARANCES OF COUNSEL

*William J. Junkerman* of counsel *(Randal R. Craft, Jr., John M. Toriello* and *Reynold H. Lewke* with him on the brief; *Haight, Gardner, Poor & Havens,* attorneys), for appellant.

*Charles F. Krause* of counsel *(Lawrence B. Goldhirsch*

and *Rudolph V. Pino, Jr.*, with him on the brief; *Speiser & Krause, P. C.*, attorneys), for respondents.

OPINION OF THE COURT

BIRNS, J. P.

Sixteen-year-old Robyn G. Haggard, a plaintiff in this action[1], was one of many persons seriously injured or killed when a Pan American plane in which she was a passenger was attacked by terrorists on December 17, 1973 at Fiumicino International Airport in Rome. At the time of the attack, the aircraft was about to depart for Beirut, Lebanon. This was the second stage of Robyn's journey from New York to Saudi Arabia as a member of a charter group of 24 friends and relatives who were flying to spend Christmas holidays with employees of an American oil company.

Robyn sought damages of $1,000,000 from Pan Am for her injuries. In the bifurcated nonjury trial that followed, the issue presented for resolution on the first branch of the proceeding was whether Pan Am's liability was limited to $75,000, a limitation found in the treaty known as the Warsaw Convention, governing international air transportation. Robyn claimed the limitation was inapplicable because no ticket had been delivered to her by Pan Am prior to her departure from New York. The carrier contended the limitation did apply, asserting that plaintiff had, in fact, received a ticket in New York prior to her departure, and that, in any event, a ticket for her journey to Lebanon and Saudi Arabia had been delivered to her in Rome during a stopover in that city.

Trial Term ruled that the limitations of the Warsaw Convention did not bar plaintiff's claim for increased damages (105 Misc 2d 927). It permitted the *ad damnum* clause to be amended from $75,000 to $1,000,000; and it dismissed defendant's affirmative defenses based upon articles 20, 21 and 22 of the Warsaw Convention as modified by the Montreal Agreement.

---

1. The consolidated action has been resolved by all plaintiffs except Robyn G. Haggard. Upon being advised that Robyn had attained her majority, the trial court amended the caption to delete Robyn's father as her guardian ad litem.

Under the terms of the Warsaw Convention of 1929 (49 US Stat 3000 *et seq.*) as modified by the Montreal Agreement of 1966 (31 Fed Reg 7302)[2], participating air carriers such as Pan Am are absolutely liable up to a limit of $75,000 per passenger for injuries suffered on board an aircraft (*Evangelinos v Trans World Airlines*, 550 F2d 152, 154). However, the carrier shall not be entitled to avail itself of such monetary limitation if it is guilty of "wilful misconduct" (Warsaw Convention, art 25, 49 US Stat 3020) or if it "accepts a passenger without a passenger ticket having been delivered" (Warsaw Convention, art 3, subd [2], 49 US Stat 3015).

As stated by the Second Circuit in *Mertens v Flying Tiger Line* (341 F2d 851, 856-857, cert den 382 US 816): "We read Article 3(2) to require that the ticket be delivered to the passenger in such a manner as to afford him a reasonable opportunity to take measures to protect himself against the limitation of liability. Such self-protective measures, could consist of, for example, deciding not to take the flight, entering a special contract with the carrier, or taking out additional insurance for the flight."

The amended verified complaint alleged as a third cause of action that the then infant plaintiff purchased a ticket from Pan Am for air passage between New York-Rome-Beirut-Dhahran, Saudi Arabia-London-New York; that the ticket purchase and consequent contract of carriage were subject to the provisions of the Warsaw Convention, the Hague Protocol and the Montreal Agreement; that pursuant to the terms of those agreements Pan Am is absolutely liable to plaintiffs for the damages sustained; and, that the "plaintiff has been damaged in excess of * * * $75,000, the expressed limit of the said Montreal Agreement." In its verified answer, Pan Am asserted as a "first separate and complete defense" that its liability, if any, was limited by the Warsaw Convention and the Montreal Agreement to "provable * * * damages not exceeding $75,000."

Trial Term accepted the procedural course which appears to have been charted by the parties wherein they treated

2. Both the Convention and the Montreal Agreement are reprinted at US Code, tit 49, § 1502, Historical Note.

the pleadings as raising the issue of whether there was delivery of a ticket to plaintiff as required by subdivision (2) of article 3 so as to limit Pan Am's liability to $75,000. In this framework, the court rejected as "confused" Robyn's pretrial testimony that "[W]e got our tickets at Kennedy from—there was some lady in charge of our group, we got our tickets at the counter all of us." It chose instead to accept the trial testimony of adults in the party who, in their recollection of the embarkation in New York on December 15, 1973, denied that any member of the group possessed or was given a ticket before leaving for Rome from John F. Kennedy International Airport in New York. Thus, the court concluded that there was no delivery of tickets prior to departure from New York and found as a matter of fact that "[i]t would appear from the evidence that all tickets were first delivered to the passengers at Rome Airport." (105 Misc 2d 927, 932, *supra.*)

We do not find it necessary to assess the credibility or reliability of the witnesses upon whom the Trial Justice relied in coming to his factual determination that no ticket was delivered to Robyn in New York prior to embarkation. For even were we to agree with Trial Term that no ticket had been delivered to Robyn in New York (compare *Ross v Pan Amer. Airways*, 299 NY 88, cert den *sub nom. Froman v Pan Amer. Airways*, 349 US 947), we would find, as a matter of law, that Pan Am is entitled to the $75,000 limitation of liability provided by the Warsaw Convention and the Montreal Agreement.

It is conceded that a ticket containing the notice required by the Warsaw Convention was delivered to Robyn in Rome several hours before departure. Certainly, under these circumstances, she was afforded a "reasonable opportunity to take * * * self-protective measures" *(Mertens v Flying Tiger Line, supra,* p 856).

We cannot subscribe to the determination of the trial court that Robyn's trip from New York to Saudi Arabia was indivisible or to the court's reliance upon *Warren v Flying Tiger Line* (352 F2d 494, 498) as supporting a conclusion that the delivery of a ticket to Robyn in Rome did

not cure the alleged failure to deliver a ticket to her in New York.

Unlike the *Warren* and *Mertens* cases *(supra)* where apparently one ticket or coupon was issued to cover the entire trip and the intermediate stops were merely "transit" stops where the passengers could leave the plane and stretch their legs while it was being refueled, etc., Robyn and her group were issued tickets containing separate coupons for each stage of their journey. There was no requirement that the passengers proceed directly and without delay to their ultimate destination, Dhahran, Saudi Arabia. In fact, after arriving in Rome on the morning of December 16, the party went to a hotel, where they stayed overnight, before resuming their journey the next morning, December 17. Robyn and her companions were in precisely the same position as a passenger joining the flight initially in Rome. Thus, the notice on the ticket as to limitation of liability and the opportunity afforded to Robyn in Rome to avail herself of self-protective measures fully complied with the requirements of the Warsaw Convention.

On the foregoing analysis, it is not necessary to reach the troublesome question as to whether an air carrier has the burden of proving delivery of a ticket in order to avail itself of the limitation of liability, or whether a plaintiff is chargeable with the burden of proving nondelivery to obviate such a limitation. A few observations are, however, appropriate.

Trial Term relied upon the decision of Judge BRODERICK in *De Marines v KLM Royal Dutch Airlines* (433 F Supp 1047) and general principles of New York law in placing the burden upon Pan Am, the party pleading the limitation of liability as an affirmative defense. However, we find, as did the Third Circuit in reversing the District Court, that there is "considerable merit" to the argument that once the air carrier has pleaded the facial limitation of liability under the convention, it is incumbent upon the plaintiff to prove facts sufficient to lift the recovery ceiling *(De Marines v KLM Royal Dutch Airlines*, 580 F2d 1193, 1199). A major airline which issues millions of tickets annually would have an enormous and costly burden of proving deliv-

ery of a ticket to a particular person, as compared with the burden of the individual passenger concerned who asserts nondelivery. (See, also, *Grey v American Airlines*, 227 F2d 282, 285, holding that the burden of proving the "wilful misconduct" exception to the convention was on the plaintiff, and *Mertens v Flying Tiger Line*, 8 Aviation Cases [CCH] 18,023 [US Dist Ct, SDNY], revd on other grounds 341 F2d 851, *supra*, where it was noted that there appeared no valid reason why the burden of proof concerning ticket delivery should be different, citing *Grey v American Airlines, supra.)*

The Warsaw Convention was intended to aid in the development of international air transportation. One of its primary objectives was to limit the liability of air carriers in case of accident *(Rosman v Trans World Airlines*, 34 NY2d 385, citing *Block v Compagnie Nationale Air France*, 386 F2d 323, 327, cert den 392 US 905).

Although monetary limitations on personal injury awards are frowned upon in this State and many other jurisdictions, the entire thrust of the Warsaw Convention is to establish a system whereby an injured airline passenger is assured of recovery against a liable air carrier, the *quid pro quo* for such recovery being the limit upon the amount recoverable *(Block v Compagnie Nationale Air France, supra*, at p 327). Thus, the norm in Warsaw Convention cases is limited rather than unlimited liability; arguably, a plaintiff seeking to avoid that norm should bear the burden of proving the exception.

It has been suggested that the Court of Appeals has spoken on the issue in *Ross v Pan American Airways* (299 NY 88, 97, *supra)* when it stated that "[s]ince the Convention itself, as a statute, grants and mandates the limitation unless 'the carrier accepts a passenger without a passenger ticket having been delivered', there is no need for a carrier who claims the limitation to show more than the delivery of an appropriate ticket, and travel of the passenger thereunder". However, in *Ross (supra)*—as here—the burden of proof issue does not appear to have been determinative. As noted above, the question of burden of proof has no practical significance in this case and we thus leave to another day the specific resolution of the issue.

Pan Am has acknowledged that Robyn is entitled to $75,000 for her injuries.

Accordingly, the interlocutory judgment of the Supreme Court, New York County (EGETH, J.), entered on September 22, 1980 should be modified, on the law, to the extent of reinstating defendant's affirmative defense based on article 22 of the Warsaw Convention as modified by the Montreal Agreement, limiting the *ad damnum* clause to provide for damages not in excess of $75,000 and awarding plaintiff Robyn G. Haggard judgment in said sum, and otherwise affirmed, without cost and without disbursements.

SULLIVAN, ROSS, MARKEWICH and SILVERMAN, JJ., concur.

Interlocutory judgment, Supreme Court, New York County, entered on September 22, 1980, modified, on the law, to the extent of reinstating defendant's affirmative defense based on article 22 of the Warsaw Convention as modified by the Montreal Agreement, limiting the *ad damnum* clause to provide for damages not in excess of $75,000 and awarding plaintiff Robyn G. Haggard judgment in said sum, and otherwise affirmed, without costs and without disbursements.