OPINION OF THE COURT
Chief Judge Cooke.
This case involves the limitations of carriers’ liability to international air passengers under the Warsaw Convention, and the conditions that an airline must meet to be protected by those limitations. The court holds that, if the defendant airline failed to deliver a ticket to plaintiff when the airline accepted her as a passenger at the outset of her trip, the airline may not invoke the liability ceilings of the Convention. The order of the Appellate Division therefore should be reversed.
Robyn Haggard, then 16 years old, was a passenger on a Pan American World Airways airplane that was attacked by terrorists at Fiumicino International Airport in Rome on December 17, 1973. She suffered second and third degree burns over 30% of her body in the firebomb attack, which killed or seriously injured many of the other passengers. Robyn, with other members of a charter group, was on the second stage of a journey from New York City to Dhahran, Saudi Arabia. The airplane had been awaiting departure for Beirut, Lebanon.
Robyn sued Pan Am for her injuries, and the airline asserted the $75,000 liability limitation of the Warsaw Convention. In the first part of a bifurcated nonjury trial, Supreme Court found that Pan Am did not deliver a ticket to Robyn until she reached Rome. The court held that Pan Am’s failure to deliver a ticket to Robyn when she embarked at Kennedy Airport in New York City rendered inapplicable the $75,000 limitation. It dismissed the airline’s affirmative defenses based upon the Convention and permitted amendment of plaintiff’s ad damnum clause from $75,000 to $1 million.
The Appellate Division modified, on the law, by reinstating Pan Am’s affirmative defenses and limiting the ad damnum clause to $75,000. The Appellate Division did not address the trial court’s finding that no ticket was delivered in New York, but held as a matter of law that even if no ticket was given to plaintiff in New York, *403 delivery of the ticket in Rome sufficed to give Pan Am protection under the Warsaw Convention’s liability limitations.
Under the Warsaw Convention of 1929 (49 US Stat 3000 et seq.), as modified by the Montreal Agreement of 1966 (31 Fed Reg 7302), participating airlines are absolutely liable to passengers for injuries suffered during air travel, up to a maximum of $75,000 per person (see Evangelinos v Trans World Airlines, 550 F2d 152, 154). Subdivision 2 of article 3 of the Convention, however, states explicitly that “if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability.” The defendant argues, and the Appellate Division agreed, that any failure to deliver the ticket to Robyn at Kennedy Airport was cured by her receipt of a ticket in Rome. This court cannot agree.
The requirement that the carrier deliver the ticket for it to avail itself of the Convention’s limitations is based on the contractual nature of the passenger-carrier relationship. “The contract plays a role fundamental to the objectives of the Warsaw Conference. The obligations arising from the contract between the carrier and the passenger carry out the Conference goal that the rules of limited liability be known to both parties” (Block v Compagnie Nationale Air France, 386 F2d 323, 333-334, cert den 392 US 905).
Pan Am maintains that delivery of the ticket in Rome was sufficient to permit the airline to assert the Convention’s limitations on liability. Such a contention, however, does not comport with the language of subdivision 2 of article 3 or with judicial interpretation of that subdivision. The subdivision states that the liability limitations shall not apply “if the carrier accepts a passenger without a passenger ticket having been delivered” (emphasis added). We hold that delivery of the ticket, to invoke the liability limitations of the Convention, must have been made by the carrier prior to the initiation of the first leg of the trip.
This court reached a similar conclusion in Egan v American Airlines (21 NY2d 160, cert den 390 US 1039). There, a *404 passenger purchased from Northwest Airlines a ticket for a round trip from New York City to Vancouver, British Columbia, with stopovers in Seattle and Chicago. On her return, she took a bus from Vancouver to Seattle rather than her scheduled flight, then took her Northwest flight from Seattle to Chicago. When she arrived too late in Chicago to catch her scheduled flight to New York, Northwest booked her onto an American Airlines flight. The American plane crashed, killing the passenger. Her administrators argued that the Warsaw Convention’s liability limitations did not apply because the American flight did not constitute “international travel.” In concluding that the Convention did apply, the court emphasized that the bus trip had not altered the fact that the Seattle to Chicago and Chicago to New York return flights were nonetheless “performed under the original contract” for round trip travel from New York to Vancouver and back and therefore constituted “international transportation” {id., at p 167).[1]
Likewise, in this case the trip to Saudi Arabia and return was contracted for as a whole. As Supreme Court found, one ticket was purchased, containing coupons for each leg of the journey.[2] Although at each stop plaintiff might have been subject to check-in and related procedures, no new contract had to be entered into before she could board for the next portion of her journey. When this contract was made and plaintiff was accepted as a passenger by Pan Am on a round trip journey from New York to Saudi Arabia, the airline was required to deliver a ticket to her containing notice of the Warsaw Convention’s liability limitations. If it failed to deliver the ticket within a reason *405 able time before plaintiff’s airplane left Kennedy Airport, it cannot find protection under the liability limitations of the Convention.
In determining that no ticket was delivered in New York, the trial court placed the burden of proving delivery upon the defendant airline. Pan Am argues that this was error and that the burden should have been placed upon plaintiff. This argument is unpersuasive.
As the parties in this case recognize, assertion of the Convention’s liability limitations is an affirmative defense (see Block v Compagnie Nationale Air France, 386 F2d 323, cert den 392 US 905, supra; Lisi v Alitalia-Linee Aeree Italiane, S.p.A., 370 F2d 508, affd 390 US 455). The party asserting an affirmative defense generally bears the burden of proof on that issue (Farmers’ Loan & Trust Co. v Siefke, 144 NY 354; Blunt v Barrett, 124 NY 117; see 3 Weinstein-Korn-Miller, NY Civ Prac, par 3018.14; McCormick, Evidence [2d ed], § 337, p 785).
Although one Federal court has opined that there was “considerable merit” to the argument that the plaintiff should bear the burden of demonstrating nondelivery of the ticket (De Marines v KLM Royal Dutch Airlines, 580 F2d 1193), this court is unpersuaded. As was recognized in Ross v Pan Amer. Airways (299 NY 88, 97, cert den 349 US 947), inasmuch as the Warsaw Convention “Mandates the limitation unless ‘the carrier accepts a passenger without a passenger ticket having been delivered’, there is no need for a carrier who claims the limitation to show more than the delivery of an appropriate ticket, and travel of the passenger thereunder.” The airline is in the best position to show delivery, having access to its own records and copies of tickets sold and actually used for passenger travel. Its agents and ground personnel will also be available to reconstruct critical events. The passengér, in contrast, may have been severely injured or killed in the accident and his or her belongings destroyed with the airplane. As a practical matter, the passenger’s burden may be nearly insurmountable.
*406 Pan Am argues by analogy that because the burden of demonstrating wilful misconduct by the airline is placed on the plaintiff (see Grey v American Airlines, 227 F2d 282, cert den 350 US 989), plaintiff should also bear the burden of proving delivery of the ticket. This does not follow. Article 25 of the Convention provides that the carrier cannot avail itself of the $75,000 liability limitation “if the damage is caused by [its] wilful misconduct”. Wilful misconduct will be asserted by the plaintiff to render inapplicable the limitation of liability to which the airline would otherwise be entitled under the contract of passage made with the passenger. The question of delivery, however, goes to whether the airline is entitled in the first instance to claim the limitation as a matter of contract. The burden of proving timely delivery of a ticket containing that contractual limitation of liability should therefore rest with the defendant airline.
In light of its conclusion that any defect in delivery was cured, the Appellate Division did not review the trial court’s factual determination that no ticket was delivered to plaintiff until she reached Rome. The matter should therefore be remitted to the Appellate Division for its review of the facts to determine whether a ticket was delivered to plaintiff in New York within the terms of the Warsaw Convention.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division, First Department, for further proceedings in accordance with this opinion.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. Indeed, under subdivision 3 of article 1, travel on several successive carriers' where some of the flights are entirely within one country will nonetheless be considered international travel “if it has been regarded by the parties as a single operation”. Article 30 requires that each successive carrier who accepts passengers satisfy the Convention’s rules, indicating the obvious intent of the Convention to assure notice. This latter article cannot be read, however, as permitting a single carrier to break up into segments a trip that was conducted entirely on its own aircraft.

. The Appellate Division considered it significant that plaintiff’s ticket contained coupons for each leg of the trip. In light of the undisputed fact that one ticket was sold to plaintiff for the entire journey, the existence of the coupons was without legal significance.