Helen BORYK et al., Plaintiffs,

v.

Aerolineas ARGENTINAS et al., Defendants.

No. 62 Civ. 3855.

United States District Court, S. D. New York.

March 25, 1971.

Speiser, Shumate, Geoghan, Krause & Rheingold, New York City, for plaintiffs; Edward M. O'Brien, New York City, of counsel.

Walsh & Levine, New York City, for defendant Aerolineas Argentinas; Jay Levine, New York City, of counsel.

## OPINION

COOPER, District Judge.

Plaintiffs' motion, pursuant to Rule 56, F.R.Civ.P., to dismiss the third and fourth affirmative defenses interposed and enter partial summary judgment on the issue of liability must be denied.[1]

■ The relevant inquiry in determining defendant's eligibility to assert Articles 20, 21 and 22 of the Convention for the Unification of Certain Rules Relating to International Transportation by Air (more commonly known as the "Warsaw Convention")—set forth in Mertens v. Flying Tiger Line, Inc., 341 F.2d 851, 857 (2d Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965), and reaffirmed in Lisi v. Alitalia-Linee Aeree Italiane, S.p.A., 370 F.2d 508, 513 (2d Cir. 1966), affirmed by an equally divided court, 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968)—is "[w]hether the ticket was delivered to the passenger in such a manner as to afford him reasonable opportunity to take self-protective measures  *  *  *."

Had defendant merely presented the airline ticket (Plaintiffs' exhibit 4) to Boryk, as was apparently done in Lisi, supra, (see e. g. dissenting opinion of Moore, J., p. 515: "Were actual notice to be the requirement, every airline would have to have its agents explain to every passenger the legal effect of the treaty  *  *  * "), we would be inclined to grant the pending application. The form and size of type print used by defendant in its "conditions of contract" are identical to those forcefully condemned in Lisi. See also, Egan v. Kollsman Instrument Corp., 21 N.Y.2d 160, 168–169, 287 N.Y.S.2d 14, 234 N.E.2d 199 (Ct. App.1967); Eck v. United Arab Airlines, 20 A.D.2d 454, 247 N.Y.S.2d 820, 824, n. 2 (1st Dept. 1964).

■ If this were all, we would certainly be inclined to dispose of the matter in favor of movant. Our hand is stayed, however, for defendant has offered sufficient evidence to raise a factual issue in support of its contention that defendant orally informed Boryk of the Warsaw Convention's limitation on liability prior to boarding his flight from New York to Buenos Aires on November 9, 1961, and accordingly delivered the ticket in such a manner as to afford "him a reasonable opportunity to take self-protective measures." Lisi, supra. Although we consider the fact that Boryk purchased independent flight insurance from Continental Casualty Co. of slight significance, we rest our conclusion on the representation by Laurence Levine (Affidavit in Opposition, pp. 7, 12–13) that he personally advised the deceased Halvey, defendant's station manager at Kennedy Airport, to inform all American passengers of the Warsaw Convention's limitation on liability. This is supported by a letter (dated December

---

1. The directive of our Circuit to give primary attention to criminal matters accounts for the somewhat belated disposition of this motion.

1960, on the stationery of the law firm of Walsh and Levine, Defendant's exhibit 14) instructing defendant's personnel that "All American passengers must be told of the * * * 8300 $ Warsaw limits" and suggesting a six (6) line statement to accomplish that result.

Whether Boryk was so informed, and whether such notice as was given was sufficient under the circumstances to constitute proper delivery, remain to be resolved at trial. Klein v. Auchincloss, Parker & Redpath, 1971, 2d Cir., 436 F. 2d 339.

On the other hand, movant's position is not without support. Our Circuit has suggested that at least the *ticket*—not the surrounding circumstances alone— must inform the passenger—a minimum standard under *Lisi, supra*:

> "This court has interpreted this [delivery] requirement to mean that not only must a passenger ticket be delivered, but the *ticket* must inform the passenger of limitations of liability contained in the Convention." Molitch v. Irish International Airlines, 1970, 2d Cir., 436 F.2d 42 at p. 44. (emphasis added).

> [A] jury could not reasonably have found that the tickets and baggage checks gave the passengers the required notice. *Lisi*, 370 F.2d at 514.

The policy underlying such a view is clear. From a practical point of view, we question the value of imparting notice "camouflaged in Lilliputian print in a thicket of 'Conditions of Contract' * * ineffectively positioned, diminutively sized, and unemphasized by bold face type, contrasting color, or anything else. The simple truth is that they are so artfully camouflaged that their presence is concealed." *Lisi, supra*, at 514. (citations omitted).

The better part of wisdom is to have so vital a message imparted in legible, readible form. This accords with the long-standing view in the law that vital written undertakings are favored and often required, N. Y. General Obligations Law, McKinney's Consol.Laws, c. 24–A, § 5–701; that in matters of important public policy, not only must material terms necessarily be in *writing* but they must also be conspicuous.[2] See, e. g. Consumer Credit Protection (Truth in Lending) Act, 15 U.S.C. § 1635(a), Pub. L. 90–321, § 504(b) eff. July 1, 1969; N.Y.U.C.C. § 2–316(2).

We decidedly do not deal here with such tertiary matters as the placement of baggage or lost articles—relatively unimportant by comparison, unpredictable or non-recurring from day to day, and which may be adequately served by oral notice alone. Such comparatively minor instances clearly are quite unlike the monumental question of the financial destiny of a family left virtually unprotected by the limitation provisions absent alternative protection.

For the average passenger, the exigencies of the occasion of taking an international flight—accompanied by the attending deadlines imposed by constraints of time, the confusion and the excited state of mind frequently induced by the strain incurred—attention to unexpected last-minute details contrast sharply with the urgent need to know, understand and reflect upon the full meaning and impact of the limitation provisions of the Warsaw Convention. The latter element includes the opportunity to read the Convention carefully and to realize and act intelligently upon such self-protective measures a passenger chooses as suitable to his needs including a decision not to take the flight (e. g. staying at the point

2. As the *Lisi* court pointed out, in 1963 the Civil Aeronautics Board recognized the difficulty of the average passenger in this regard and issued 14 C.F.R. § 221.175 on "ADVICE TO INTERNATIONAL PASSENGERS ON LIMITATION OF LIABILITY" which provides in pertinent part:

"The statement prescribed herein shall be printed in type at least as large as ten point modern type and in ink contrasting with the stock on (1) each ticket; (2) a piece of paper either placed in the ticket envelope with the ticket or attached to the ticket; or (3) on the ticket envelope."

of embarkation indefinitely or seeking an alternative carrier or means of carriage), or enter into a special contract with the carrier or take out additional insurance for the flight. *Lisi*, at 512.

Although the deficiency of clarity in type together with an absence of opportunity to reflect upon the steps imperatively requisite to effectuate a binding legal relationship for the protection of one's family, strongly points to the conclusion that the ticket and oral warning alleged here would not provide sufficient notice, we feel presently constrained and do, for the reasons stated herein, deny the motion at this stage of the proceedings.

So ordered.