*930 OPINION OF THE COURT
Shanley N. Egeth, J.
THE ACTION
This is an action for personal injuries sustained by plaintiff Robyn G. Haggard on December 17, 1973, arising out of a terrorist bombing while she was a fare-paying passenger on board Pan American Flight No. 110 at Rome airport prior to its scheduled departure for Beirut, Lebanon. As a result, Robyn, then 16 years old, allegedly sustained multiple second and third degree burns to about 30% of her body, which required skin grafts to various parts of her body, and resulted in hypertrophie scarring over the graft areas, severe disfigurement and permanent injuries.
PRETRIAL CONFERENCE NARROWED ISSUES — AGREED PROCEDURE
After a number of pretrial conferences it became clear that the defendant conceded that the infant plaintiff sustained her injuries while she was a passenger of the defendant on an international flight which was subject to the provisions of the Warsaw Convention (Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 US Stat 3000 et seq.), as limited by the Montreal agreement. Under a relevant provision of Montreal, participating air carriers, including Pan American, agreed to an increased limit of liability to $75,000 for international transportation which included flights for which the United States was a point of origin, point of destination, or an agreed stopping place. The carriers also agreed therein to give up their right to avail themselves of the “due care” defense afforded by subdivision 1 of article 20 of the Warsaw Convention (49 US Stat 3019).
From the outset the defendant claimed the applicability of the $75,000 limitation of liability provisions of the Warsaw-Montreal accords, and offered to pay that sum in full payment of all of the claims asserted in this action. Plaintiff asserted the nonapplicability of the liability limitation provisions, while agreeing that the action was subject to Warsaw-Montreal. It became apparent that the question *931 of the $75,000 liability limitation and the extent of damages were issues requiring resolution at a trial which was scheduled to be heard before a jury. After extended discussion and exploration, it was agreed that the trial would be bifurcated and that a jury would be waived solely as to the resolution of the threshold issue of the applicability of the $75,000 limitation of liability. It was agreed that a jury trial as to damages would await the resolution of anticipated appeals following the trial determination of the liability limitation issue.
This portion of the case was thereupon tried before me without a jury. Prior to the commencement of the trial, it became clear that the sole issue to be determined was whether from the proofs adduced at trial and otherwise agreed to there was sufficient delivery of a ticket with sufficient notice to the infant plaintiff as to render the $75,000 limitation of liability applicable. By the time of trial, plaintiff conceded that no attempt would be made thereat to establish willful misconduct upon the part of the defendant. Other early assertions of plaintiff as a bar to requisite ticket delivery, such as inadequate size and content of the ticket notice, and a defense of infancy, were also abandoned prior to or during trial. Both parties conceded that the sole issue to be -tried was whether there had been such delivery of a ticket as would be sufficient to entitle the carrier to invoke the partial defense of the $75,000 limitation of liability. Thus, defendant’s counsel, a most experienced expert in this type of litigation, agreed at the outset of the trial that “the sole issue is delivery of a ticket”, a concession totally consistent with the position taken by him throughout all pretrial discussions. In light of the parties’ agreements as to the manner in which they wished to chart the course of their litigation, the court, with the concurrence of counsel, sought to procedurally effectuate their intent with a minimum of technical complication and confusion (see Cullen v Naples, 31 NY2d 818, 820; Stevenson v News Syndicate Co., 302 NY 81, 87, rearg den 302 NY 690). Neither counsel nor the court made any pretrial attempt to formally amend the complaint to expressly set forth allegations of nondelivery as a basis for nonapplicability of the limitation of liability. It might well have been argued that *932 a proper pleading should have contained such an allegation to support any recovery in excess of the Montreal limit. This, however, was rendered unnecessary by the parties’ own method of framing their issues and charting a procedural course.
Upon the basis thereof, the first and second causes of action, predicated upon willful misconduct and seeking a $1,000,000 recovery, were abandoned at the trial in which no proof of gross negligence was adduced. In addition, a motion was granted to conform the pleadings to the proof, and to amend the ad damnum sought in the third cause of action from $75,000 to $1,000,000. This facilitated the parties’ agreement to restrict a recovery to $75,000 if the limitation was held applicable, and to authorize proof of damages up to $1,000,000 if it were not.
WARSAW CONVENTION — DELIVERY REQUIREMENT
The significance of the issue of delivery to the applicability for the Warsaw Convention is evident from examination of article 3 of the convention, which provides:
“(1) For the transportation of passengers the carrier must deliver a passenger ticket which shall contain the following particulars:
“(a) The place and date of issue;
“(b) The place of departure and of destination;
“(c) The agreed stopping places * * *
“(d) The name and address of the carrier or carriers;
“(e) A statement that the transportation is subject to the rules relating to liability established by this convention.
“(2) The absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation, which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability.” (49 US Stat 3015.)
ISSUES TO BE DETERMINED
Under the procedural course charted by the litigants, the *933 broad issue raised for determination in this trial was whether or not there was such ticket delivery to plaintiff, or to her authorized agent, prior to the commencement of the flight, as to enable the carrier to comply with the condition contained in subdivision (2) of article 3 of the Warsaw Convention as a prerequisite to its right to avail itself of the liability limitation.
Central to the factual issue as to the existence or adequacy of appropriate ticket delivery under Warsaw-Montreal is the legal issue as to whether the burden of proof is to be imposed upon the air carrier to establish requisite delivery, or whether the passenger plaintiff must assume the burden of proving nondelivery of a ticket with the proper notice. It would appear that this issue of assignment of the burden of proof as to delivery is one of first impression in this State.
Also raised is the collateral issue of whether ticket delivery at an initially scheduled stopping place can cure an insufficiency of delivery at the point of origin of the flight, and the possible additional question as to whether ticket delivery to a group or tour leader constitutes delivery to the passenger.
FINDINGS OF FACT
After evaluating all of the evidence and testimony presented at trial, I find that there was no physical delivery of a ticket to the then infant plaintiff prior to the time she boarded the Pan American flight at JFK Airport in New York. When weighed against the totality of the evidence presented, together with the demeanor and appearance of the trial witnesses, I am constrained to conclude that plaintiff’s deposition testimonial admission of ticket delivery at JFK was erroneous, and that in fact such delivery at JFK did not occur. The uncontradicted credible disinterested testimony at trial by Bonnie Warner and Barbara Middendorf, plaintiff’s brief trial testimony, and the deposition evidence of Agnes Manion as to the physical facts and activities at JFK and Rome, upon cumulative analysis, inescapably compel this conclusion.
I also find that no evidence was adduced to indicate that any ticket delivery upon behalf of the passengers had been *934 made to the group leader, Berka, prior to boarding or departure from JFK. It would appear from the evidence that all tickets were first delivered to the passengers at Rome Airport.
APPLICATION OF RELEVANT LAW
REQUISITE PRIOR TICKET DELIVERY
It is clear that upon an international trip, subject to Warsaw, where there has been no delivery of a ticket with sufficient notice of the applicability of the convention, there is no limit upon the carrier’s liability (Warsaw Convention, art 3, subd [2], 49 US Stat 3015). The limitation may also be avoided by proof that the accident was caused by “wilful misconduct” by the carrier (Warsaw Convention, art 25, 49 US Stat 3020). The applicable authorities have established that the delivery requirement of subdivision (2) of article 3 requires that the ticket be delivered at the commencement of the trip in such sufficient manner as to afford the passenger an opportunity to take protective measures against the limitation in liability.
On this basis, the Second Circuit Court of Appeals found delivery insufficient in Mertens v Flying Tiger Line (341 F2d 851, cert den 382 US 816). There, in an action for wrongful death on an international flight, the testimony established that the decedent did not receive a ticket until after he had boarded the aircraft chartered by the United States to transport military cargo and personnel. The Second Circuit found the Warsaw limitation unavailable, concluding that there had been insufficient delivery of a ticket and further that the liability limitation was printed in such a manner as to be unnoticeable and unreadable: “We read Article 3(2) to require that the ticket be delivered to the passenger in such a manner as to afford him a reasonable opportunity to take measures to protect himself against the limitation of liability. Such self-protective measures, could consist of, for example, deciding not to take the flight, entering a special contract with the carrier, or taking out additional insurance for the flight.” (Mertens v Flying Tiger Line, supra, pp 856-857.)
The same analysis was adopted in Warren v Flying Tiger *935 Line (352 F2d 494), in actions arising out of the death of servicemen, passengers on board an aircraft chartered by the air force, which disappeared en route from California to Vietnam. The central issue there was the applicability of the Warsaw limitation on liability. There, boarding tickets had been delivered to each passenger at the foot of the ramp at the time of boarding, with no opportunity to read the ticket or return to the terminal to purchase insurance. After intermediate stops at Honolulu, Wake Island and Guam, the aircraft disappeared en route to Manila. In agreeing with the disposition in Mertens, the court found an implied requirement in subdivision (2) of article 3 “that delivery of the passenger ticket be made sufficiently in advance of the flight so that the passenger may, if he desires, obtain additional insurance protection.” (Warren v Flying Tiger Line, supra, p 498.). The court further found (supra, p 498) insignificant the fact that the servicemen could have purchased flight insurance at Honolulu, one of the stopping places, since “itjhey had already been accepted as passengers without an adequate delivery of tickets having been made.” (Emphasis supplied.)
The theory underlying the holding in Mertens was also followed by the Second Circuit in Lisi v Alitalia-Linee Aeree Italiane (370 F2d 508, affd 390 US 455 [equally divided court]). The court there found the notice on the ticket to be so unnoticeable and unreadable as to be insufficient to apprise the passenger as to the applicability of the limitation of liability applicable under Warsaw Convention. It therefore affirmed the lower court order granting partial summary judgment dismissing the carrier’s limitation of liability affirmative defense.
Our Court of Appeals followed the rationale of Mertens, Warren and Lisi to similarly find insufficient the delivery of a ticket containing a Lm-like notice which appeared in small, almost unreadable, four- and one-half point print (Egan v Kollsman Instrument Corp., 21 NY2d 160, cert den 390 US 1039). Chief Judge Fuld, writing for the unanimous court (supra, p 171), took cognizance of “a national policy requiring that air carriers give passengers clear and conspicuous notice before they will be permitted to limit their liability for injuries caused by their negli *936 gence.” The court-there concluded that the insufficiency of the notice prevented the carrier from asserting the limitation on its liability afforded under the Warsaw Convention.
This court has already determined as a matter of fact that there was no actual physical ticket delivery to this infant plaintiff prior to her boarding the flight in JFK. No issue has been raised as to the adequacy of the notice which was contained in the actual ticket ultimately received by the plaintiff (to thereby come within the ambit of Egan v Kollsman Instrument Corp., supra). Although originally discussed as a possible question in pretrial conference, this issue was abandoned at the time of trial. Accordingly, it must be determined that there has been a failure by the carrier to effect such ticket delivery at JFK as is required to enable it to avail itself of Warsaw’s liability limitation, unless such failure may be considered cured or vitiated by an actual ticket delivery at JFK to Berka as an agent of the plaintiff (to create a relationship hereinafter labeled as constructive delivery); or unless subsequent ticket delivery to plaintiff in Rome meets the Warsaw Convention delivery requirement.
CONSTRUCTIVE DELIVERY
The defendant contends that delivery of the plaintiff’s ticket to Berka prior to boarding at JFK constitutes sufficient delivery to plaintiff to render the convention limitation applicable. This argument is predicated upon its interpretation of the effect of the opinion of the Court of Appeals in Ross v Pan Amer. Airways (299 NY 88, cert den 349 US 947). Notwithstanding this court’s prior factual finding that there has been no evidence adduced of such a ticket delivery to Berka, this issue must be dealt with herein inasmuch as the plaintiff may nevertheless be chargeable with such a delivery depending upon the ultimate judicial resolution of the novel question of the proper allocation of the burden of proof.
Irrespective of such a determination, however, defendant’s reliance upon the Ross decision in this case is misplaced. Ross is clearly distinguishable on the facts. There, the proof established that plaintiff (the well-known singer Jane Froman) had ratified and adopted the prior action by *937 the army and Abraham in taking out a ticket in her name. The significant factual distinction was that there, but not in this case, the plaintiff was standing next to Abraham when the ticket bearing her name (containing all of the particulars as to the intended flight and a reference to the convention limitation) was laid on the table in front of her, and she then boarded the plane as a traveler on that ticket. The court concluded, on that basis, that when she boarded the plane on that ticket, she impliedly, if not expressly, ratified the actions of the army and Abraham in accepting delivery of the ticket in her name.
In the present action, unlike Ross, no proof has been adduced sufficient to find either ratification or adoption by plaintiff of any purported delivery to Mrs. Berka.
Although Ross was decided on the issue of ratification, the court suggested that under some facts an authorization to an agent to accept a ticket delivery for a passenger might be spelled out despite the absence of an express grant of authority to do so. The Court of Appeals, however, declined to so rule as a matter of law, based upon the facts presented to it on the determination of the motion for summary judgment there appealed from. No such surrounding facts have been adduced in this case to even remotely approximate the factual proofs before the Ross court.
Since this suggestion in the 1949 Ross decision, no subsequent New York appellate court decision has been brought to the attention of this court in which a passenger has been impliedly chargeable with authorization to a third party for acceptance of ticket delivery. The decisions in the Federal courts and in our State courts since Ross raise serious doubt as to whether present public policy would be supportive of such a result. Ross was decided at a time when policy considerations required special protection for a developing infant industry. The growth of the industry and current universal acceptance of air travel negate the continued need for such special treatment, and, in fact, have engendered efforts to redress imbalance and inequity by construing the delivery requirement narrowly for the benefit of the passenger (see Egan v Kollsman Instrument Corp., 21 NY2d 160, supra; List v Alitalia-Linee Aeree Italiane, *938 370 F2d 508, affd 390 US 455 [cited in Egan]). This was recently stated by a Federal appellate court, as follows: “The recent trend of appellate court decisions has been to accord substance to the protections that Article 3 of the Convention intended to provide airline passengers. The carriers are not to be permitted to use the article as a protective shelter to shield themselves from their responsibilities to the public” (Deutsche Lufthansa AG. v Civil Aeronautics Bd., 479 F2d 912, 917).
BURDEN OF PROOF
In this case, as in other cases arising out of a catastrophe such as an air crash, no direct proof has been adduced as to ticket delivery. Frequently, no such evidence is available. In the absence of adequate evidence, the resolution of a crucial issue such as ticket delivery in the instant action may be determinable only by an allocation of the burden of proof. At bar, plaintiff contends that the defendant is chargeable with the burden of proof as to delivery in order to avail itself of the affirmative defense of limitation of liability, while the defendant argues that plaintiff has the burden of proving nondelivery.
Neither our State nor the Federal appellate courts appear to have yet clearly resolved the question of the appropriate allocation of the burden of proof on this issue.
The defendant posits the decisions in Grey v American Airlines (227 F2d 282, cert den 350 US 989 ) and in Mertens v Flying Tiger Line (1964 US Av Rep 485) to support its position that the burden of proof as to delivery is on the plaintiff. The Grey court dealt with the burden of proof issue in connection with article 25 of the Warsaw Convention (49 US Stat 3020) in order to decide whether the carrier was precluded from asserting a limitation of liability defense because the damage resulted from willful misconduct. It imposed the burden of proof upon the passenger to establish willful misconduct sufficient to avoid the limitation of liability under Warsaw. The determination in Grey was relied upon by the District Court in Mertens to assign to the plaintiff the burden of proof on the delivery issue. It saw no valid reason why the burden of proof on this issue should receive different treatment than that applicable to willful *939 misconduct, the other exception to the treaty damage limitation clause, and it adopted the same allocation made by the court in Grey. Mertens was reversed on other grounds by the Circuit Court (341 F2d 851, supra) in a decision which did not deal with the burden of proof question.
In actuality, Grey does not compel the imposition of the ticket delivery burden of proof upon the plaintiff. The purpose of the Grey court in imposing the burden of proving willful misconduct upon the passenger, rather than upon the carrier, was to avoid placing the onus of proving a negative upon the defendant. The same reasoning, and the avoidance of an obligation to prove a negative, would require placement of the delivery burden upon the defendant. The recent carefully reasoned decision of Judge Broderick in De Marines v KLM Royal Dutch Airlines (433 F Supp 1047) made this point. That court cited Ross with approval and declined to follow Mertens. Finding Mertens’ reliance upon Grey misplaced, it held that the burden of proof as to ticket delivery was on the defendant carrier. The following language sets forth its rationale (De Marines v KLM Royal Dutch Airlines, supra, p 1062): “We believe that the different purposes for which these two provisions were enacted and the way in which they operate support a different allocation of the burden of proof. The Court in Grey recognized that in the event of a crash where the plane is destroyed and the passengers and crew killed, requiring a carrier to prove that the crash had not been caused by its wilful misconduct would be an undue burden. On the other hand, this same consideration leads to the contrary conclusion with respect to delivery of a ticket, for in the case of a crash the carrier would undoubtedly be in a better position than the passenger to check its records and prove that a ticket had been delivered. Unlike proving wilful misconduct, there is no policy reason which should relieve a carrier from proving the existence of a ticket, and no case (other than the District Court opinion in Mertens) has so held. The Court properly placed the burden of proving the delivery of a ticket on the defendant.” This decision was reversed upon appeal to the Third Circuit (580 F2d 1193) upon the narrow ground that resolution was dependent upon whether State or Federal law was determinative as to burden of proof. The case *940 was therefore remanded to the District Court to enable it to determine and apply the appropriate law.
Although this court concurs with the reasoning of Judge Broderick in De Marines, it further concludes that application of general principles of New York law would compel the same result on this issue.
It is well settled that generally a party pleading an affirmative defense has the burden of proving it (see NY PJI 1:60; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3018:14, p 30-412; McCormick, Evidence [2d ed], § 337, p 785; Blunt v Barrett, 124 NY 117). It is also clear that a carrier or a party asserting an affirmative defense of limitation of liability has the burden of establishing it (American Mach. & Foundry Co. v Santini Bros., 54 Misc 2d 886, affd 46 AD 2d 844). Limitation of liability under Warsaw is also a matter to be raised as an affirmative defense. (See, e.g., Egan v Kollsman Instrument Corp., 21 NY2d 160, supra; Manufacturers Hanover Trust Co. v American Airlines, 23 AD2d 832; Matter of Pago Pago Aircrash, 419 F Supp 1158, 1159; Boryk v Argentinas, 332 F Supp 405, 406; Notarian v Trans World Airlines, 244 F Supp 874, 877-878; Glenn v Compania Cubana de Aviacion, 102 F Supp 631, 634-635.)
Although the decision of the Court of Appeals in Ross v Pan Amer. Airlines (299 NY 88, 97, supra) did not adjudicate the issue of burden of proof as to delivery, the following language from the opinion is instructive: “Since the Convention itself, as a statute, grants and mandates the limitation unless ‘the carrier accepts a passenger without a passenger ticket having been delivered’, there is no need for a carrier who claims the limitation to show more than the delivery of an appropriate ticket” (emphasis added).
Accordingly, this court adopts the view that logic, public policy, practicality and general principles of procedural law require that the burden of proof as to the issue of ticket delivery be imposed upon a carrier seeking to avail itself of the benefit of a Warsaw Convention limitation of liability defense. This is consistent with the allocation of the burden of proof in most other areas of our law in which a party may limit its liability by assertion of an affirmative defense. Except for the erroneous District Court decision in Mertens (supra) this court is aware of no State or Federal *941 precedential decision which precludes this determination.
Therefore, it having already been found that no evidence was adduced at trial to establish that Berka received plaintiff’s ticket prior to the time she boarded the flight, said issue must now be resolved against the defendant chargeable with its burden of proof. It is therefore determined as a fact that plaintiff’s ticket was not delivered to Berka prior to her boarding of the plane.
ROME
The defendant further asserts that even if there was no ticket delivery to plaintiff in JFK which was sufficient to meet the Warsaw Convention requirement, any such deficiency was cured and the convention delivery requirement was complied with by an acknowledged ticket delivery to plaintiff in Rome over two hours before boarding for the Rome to Beirut leg of the journey. The defendant contends that the flight from Rome to Beirut (after an overnight stay in Rome), requiring separate check in and ticket handling, constitutes a separate and independent flight, which gave rise to a newly created carrier’s right to comply in Rome with the Warsaw Convention ticket delivery requirement. In further support of its argument, it asserts that sufficient time elapsed between check in and boarding to enable a passenger to examine the ticket and procure additional insurance protection. This contention must be rejected as legally and factually untenable.
The mere fact that members of the tour group underwent a check in following an overnight stay in Rome, before departure from that city, does not create a new independent flight from Rome to Beirut for the purpose of the application of the Warsaw-Montreal limitation on liability. Plaintiff’s flight coupon retrieved by Pan American during preparation for departing from Rome affirmatively established that the Rome to Beirut flight was but one “leg” in plaintiff’s journey commencing in New York. The continuing nature of the single trip is apparent from the face of the ticket and supported by the testimony of Pan American’s representative, Trentler, who identified the flight coupon as showing “the preceding leg” of the trip.
Moreover, the convention mandate expressed in subdivi *942 sion (2) of article 3 is clear in its direction that “if the carrier accepts a passenger without a passenger ticket having ■ been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability” (49 US Stat 3015; emphasis added). As applied here, defendant accepted plaintiff as a passenger in New York without prior delivery of a ticket containing the requisite notice. It therefore may not avail itself of the limited liability protection afforded by the convention.
The subsequent delivery in Rome did not cure the defect in delivery in New York. This argument was rejected in Warren v Flying Tiger Line (352 F2d 494, 498, supra) wherein the court observed: “We regard as immaterial the fact that the passengers could have purchased additional flight insurance at Honolulu. They had already been accepted as passengers without an adequate delivery of tickets having been made. Before boarding the plane at Travis they were entitled to adequate notice which would have enabled them to purchase additional insurance covering the entire flight.”
Defendant has not supplied, nor has the court’s independent research disclosed, any authority contrary to the Warren determination. On its facts in relation to the legal principle here discussed, Warren is indistinguishable from the case at bar. The Warren decision is totally consistent with our State decisions holding various legs of a trip to be a single operation, rather than characterizing a particular leg as a separate journey (Egan v Kollsman Instrument Corp., 21 NY2d 160, supra; Wyman v Pan Amer. Airways, 181 Misc 963, affd 267 App Div 947, affd 293 NY 878, cert den 324 US 882). It is also consistent with the frequent and recurrent efforts of most carriers in seeking to avail them-self of the limitation of liability provisions of the convention . and domestic filed tariffs in injury and property loss or damage claims asserted against the carrier by successfully arguing the indivisibility of parts of a single trip.
CONCLUSION
Accordingly, after completion of the trial, it is found on the facts and the law that there, was no ticket delivery to plaintiff for this international flight sufficient to comply *943 with the Warsaw Convention requirements enabling the defendant airline to impose the $75,000 limitation of liability upon plaintiff. There was no convincing proof of ticket delivery at JFK to plaintiff, or to a specifically authorized agent acting in her behalf, or any delivery to a third person which was subsequently ratified by plaintiff. Defendant has failed to sustain its burden of proof as to the condition precedent to the assertion of the convention limitation of liability. Delivery of the ticket was required to be made at the time of trip commencement in New York, and later delivery of a ticket in Rome by the carrier did not cure the failure to meet the convention obligation for delivery at the time of initial acceptance of plaintiff as a passenger on her journey from New York to Saudi Arabia. Plaintiff is therefore not bound by the convention limitation of liability provision. It is established, therefore, that the defendant is absolutely liable, irrespective of negligence, for all damages sustained by plaintiff Robyn Haggard as a result of the December 17, 1973 incident at Rome Airport.
DECISION
Plaintiff is entitled to an interlocutory judgment on liability on the third cause of action, as amended. The first and second causes of action predicated upon the willful misconduct of the defendant are dismissed. The affirmative defense asserted by the defendant based upon the limitation of liability provisions of the Warsaw Convention is dismissed. All motions upon which the court reserved decision during trial are disposed of as indicated herein.
In view of the expressed intent of the parties concerning an appeal from this decision, this case is removed from the Trial Calendar of this part, subject to its restoration by the clerk of the part following service upon him of a copy of the final disposition of such appeal.