OPINION OF THE COURT
Richard W. Wallach, J.
The trial jury has rendered a verdict in the sum of - $525,000 in favor of plaintiff in this action to recover damages for personal injuries against defendant American Airlines. Defendant (American) now moves to set aside the verdict or in the alternative to limit its damages to the maximum $75,000 sum allowable under the Warsaw Convention (49 US Stat 3014; US Code, tit 49).
The facts, although simple, are certainly unusual. The proof showed that in January, 1972, plaintiff, Dr. Hannelore Adamsons, was in Haiti conducting a sociological study when she was stricken with pain and admitted to a hospital in Port-au-Prince suffering from a progressive paralysis of her lower extremities. Since the doctors at Port-au-Prince, were baffled as to the nature of her illness, arrangements were made for her flight on American Airlines to New York City on February 1, and her immediate hospitalization at the Columbia Presbyterian Medical Center. Dr. Adamsons’ friend, Mrs. Hamaty, made a reservation for plaintiff and was issued a prepaid first class ticket at least a day before the intended flight. Plaintiff was taken by ambulance to the airport for boarding on defendant’s flight, and she was literally part-way up the gangway in a boarding chair when she was refused passage. The next available (Pan-American) flight was two days later, and during the enforced interval plaintiff’s condition seriously worsened. Plaintiff’s medical expert, Dr. Asa Ruskin, testified that the 48-hour delay in the surgical removal of a hematoma from plaintiff’s spinal column, found when plaintiff arrived at Columbia Presbyterian Hospital, was the proximate cause of her almost total paralysis below the fourth thoracic vertabra, and entailed full destruction of her voluntary urinary and bowel functions. In Dr. Ruskin’s opinion these catastrophic consequences (although not all ensuing impairments) would, with reasonable medical cer *791 tainty, have been avoided if the two-day delay in surgical intervention had not been forced upon plaintiff. The court’s instructions as to damages required the jury to fix its award, if any, within the limits of this expert testimony.
American urges that there was no basis for submission of the case to the jury because the applicable tariff rule (rule 8, subd A) in force pursuant to section 1373 of title 49 of the .United States Code entitled it to refuse passage to plaintiff. The pertinent provisions of that rule, which has the force of law (Crosby & Co. v Compagnie Nationale Air France, 76 Misc 2d 990, affd 42 AD2d 1050, mot for lv to opp den 33 NY2d 521, cert den 416 US 986), provide that the carrier will refuse to carry any passenger when:
“(a) such action is necessary for reasons of safety; [or]
“(c) the * * * physical condition of the passenger is such as to
“(i) require special assistance of the carrier, or * * *
“(ii) involve any hazard or risk to himself or the other persons”.
American took the position on the trial and reasserts here that this tariff provision vested it and its supervisory employees at the Port-au-Prince airport with absolute discretion to refuse boarding to plaintiff once they determined that such action was necessary for the safety of Dr. Adam-sons or anyone else, or that she would require special assistance. Plaintiff’s evidence was that American was negligent in failing to ascertain the actual facts, which were that her condition was not contagious, that she was fully capable of making the flight with reasonable stewardess assistance within the contemplation of any ordinary first class passenger, and that American failed to contact the Port-auPrince Hospital by telephone to speak to her treating doctor if further information or corroboration were required. Further, plaintiff urges that if American had made this inquiry it might well have been further apprised of the far graver risks confronted by the refusal to transport Dr. Adamsons. On this issue, the court charged the jury that they were not to sit in judgment upon or second-guess the decision of American’s pilot and station chief at the airport that day and review its soundness. The main liability issue for them to determine, under the court’s charge, was *792 whether American was negligent or not in failing to gather the necessary information, so as to exercise a reasonably informed and intelligent discretion. The jury, in their verdict, has found American negligent on this score, and the court can find no reason for disturbing this determination.
In the alternative American urges that under the applicable provisions of the Warsaw Convention (art 17) so much of the verdict as exceeds the maximum $75,000 recovery under that treaty must be vacated. Article 17 provides that an international air carrier shall be liable for “any other bodily injury suffered by a passenger, if the accident which caused the damage * * * took place * * * in the course of any of the operations of embarking or disembarking.” (Emphasis added.)
The court holds that this language cannot be stretched so as to apply to this case inasmuch as (i) plaintiff never was accepted as “a passenger” and never acquired that status; (ii) no “accident” may be said to have occurred; and (iii) plaintiff was not in the act of “embarking” or “disembarking” when the bodily injury suffered by her was sustained. These conclusions follow from existing case law.
(i) Where a plaintiff in a personal injury action seeks a recovery in excess of the treaty limit, the applicability of the Warsaw Convention damage limitations is a matter of defense and rests entirely upon the contract of carriage (Matter of Air Crash in Bali, 462 F Supp 1114; Manion v Pan Amer. World Airways, 105 Misc 2d 927). Issuance of the ticket to plaintiff’s agent, Mrs. Hamaty, was conditional acceptance of plaintiff as a passenger, but she never actually became one (although extremely desirous of doing so) because American repudiated the contract of carriage before any carriage took place. Since the contract of carriage was canceled by American’s volitional act, a partial defense which rests entirely on that contract becomes no longer viable. For this reason it has been held that a passenger “bumped”, allegedly in a discriminatory manner, from an international flight will have a cause of action under subdivision (6) of section 404 of the Federal Aviation Act (US Code, tit 49, § 1374, subd [b]) unaffected by the *793 Warsaw Convention (Mahaney v Air France, 15 Aviation L Rep, p 17,665).
(ii) Secondly, no accident within the meaning of the convention has been shown. In Warshaw v Trans World Airlines (442 F Supp 400), the plaintiff sought to recover damages for deafness caused by automatic repressurization of defendant’s aircraft in the course of an international flight. The court held (p 413) that because this occurred “in accordance with ordinary and routine operating procedures under conditions which were free of any malfunctions or abnormalities, that injury [deafness] does not constitute an 'accident’, as that term is defined in Article 17 of the Warsaw Convention, as modified by the Montreal Agreement.”
The same absence of “accident” is the situation here: it was American’s position on the trial that they rejected Dr. Adamsons as a passenger in accordance with ordinary and routine operating procedures in alleged compliance with the governing tariff. The volitional character of the acts of American’s personnel cannot be regarded as “accidental” within the purview of article 17. The court notes that an amendment to the Warsaw Convention was proposed at the Guatemala protocol conference on February 9,-1971, where consideration was given to substitution of the word “event” for “accident” in article 17. However, this change is not yet effective in the absence of United States Senate ratification.
(iii) Finally it cannot be said that Dr. Adamsons’ injuries here occurred either in the course of embarking or disembarking. That would have been the case if Dr. Adam-sons had been dropped or injured by the airline personnel while carrying her in the boarding chair. Here, the injury to Dr. Adamsons began only at the moment when the plane left the tarmac at Port-au-Prince without Dr. Adamsons on board. In order for an injury to be cognizable under the Warsaw Convention as taking place in the course of embarking or disembarking, the Federal courts have announced three tests: (a) the activity of the plaintiff at the time of the accident; (b) the degree of control of the plaintiff’s movements by the defendant; and (c) the location of the incident. Thus, where a plaintiff is injured by reason *794 of the collapse of the airport waiting room roof at a time when plaintiff was in the public waiting area and not responding to any direction of the defendant airline, no Warsaw liability attached (Upton v Iran Nat. Airline Corp., 450 F Supp 176, affd 603 F2d 215; see, also, Day v Trans World Airlines, 393 F Supp 217, 220, affd 528 F2d 31, 33, cert den 429 US 890).
In this case it is clear that the injury complained of began at a time when the airline had relinquished control of Dr. Adamsons to the medical personnel of the Port-auPrince Hospital; indeed American had done all it could to repudiate any control over Dr. Adamsons’ movements subsequent to their refusal to honor her ticket.
For the foregoing reasons the partial defense of the Warsaw Convention must fail.
Prior to commencement of trial in this case, the court had entertained plaintiff’s motion to amend the ad damnum clause of the complaint from $500,000 to $3,000,000. The court denied this motion (Osborne v Miller, 38 AD2d 298; Galarza v Alcoa S. S. Co., 34 AD2d 907; Koi v P.S. & M. Catering Corp., 15 AD2d 775; Jimenez v Seickel & Sons, 22 AD2d 643; Colonel v Targee Contr. Co., 65 AD2d 720; Peterson v Spartan Inds., 64 AD2d 958). Despite the fact that the verdict of the jury exceeded the $500,000 ad damnum clause by the sum of $25,000 the court will not reconsider its determination in this respect.
Accordingly, so much of the verdict of the jury as exceeds the sum of $500,000 must be vacated and American’s post-trial motion is granted to this limited extent. In all other respects the motion is denied. '
Plaintiff may enter judgment against defendant in the sum of $500,000, and it is so ordered.