### GREY et al. v. AMERICAN AIR-
### LINES, Inc.

United States District Court
S. D. New York.
Dec. 21, 1950.

Arthur M. Laufer, New York City, for plaintiffs.

Haight, Deming, Gardner, Poor & Havens, New York City, for defendant.

NOONAN, District Judge.

This is a motion by plaintiff for summary judgment directed to the second and third separate defense, challenging the legal sufficiency thereof.

This action arises out of the crash of the defendant's aircraft near Dallas, Texas, on November 29, 1949. Recovery is sought for damages suffered by the two surviving infant children of Harry and Sophie Goldberg, who died in the crash.

The plaintiffs here challenge the second and third defenses. The second defense pleads limitation of liability under the provisions of the Warsaw Convention of October 12, 1929, which has been adhered to on behalf of the United States pursuant to a Presidential Proclamation of October 29, 1934, 49 Stat. Pt. 2 at pp. 3000 et seq. In

the third defense, defendant alleges that by the terms of the contract of transportation the carrier and the deceased herein were made subject to the limitations of the Warsaw Convention.

Plaintiffs in support of their motion urge:

a. The particular flight in issue was not one in international transportation within the purview of the Warsaw Convention.

b. It was not the intention of the parties to consider the flight one in international transportation.

c. Even if within the terms of the Warsaw Convention, the defendant failed to comply with the strict requirements of the provisions of the Convention.

These points shall be considered in the order stated.

a. The particular flight in question, designated Flight 157 by defendant, was one originating at New York, with scheduled stops at Washington, Dallas and Mexico City. It is admitted by both parties that there were passengers on the plane destined for Washington and Dallas. On these facts plaintiffs argue that this flight was not one in international transportation, and so not within the meaning and intention of the Warsaw Convention.

Article 1 of the Convention provides that the Convention "shall apply to all international transportation of persons * * *". Article 1, (2) defines what constitutes "international transportation" and reads in part:

"(2) For the purposes of this convention the expression 'international transportation' shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties * * *".

The United States of Mexico became a high contracting party to this convention on February 14, 1933. It is undisputed, therefore, that at the time of the carriage herein, the United States and Mexico were adherents to the Warsaw Convention.

Accordingly, I do not find persuasive plaintiffs' argument that a single plane engaged in a single flight may not be international in respect to some passengers and domestic as to others.

The language, noted supra, states that the character of the transportation shall be determined according to the contract made by the parties. In this instance the tickets or contracts of passage were for transportation from New York to Mexico City.

The transportation here was one in which, according to the contract made by the parties, the place of departure and of destination are situated within the territories of two high contracting parties.

b. Plaintiff contends that it was not the intention of the parties to consider the flight one in international transportation. This contention must obviously fall, for the convention becomes the law of the carriage when the contract of the parties provides for passage between certain designated termini. This being the contract, the terms of the convention apply by its own terms and not because the parties have so agreed. Ross v. Pan American Airways, 299 N.Y. 88, 97, 85 N.E.2d 880, 13 A.L.R.2d 319. Plaintiffs, in effect, urge that the convention applies only when the parties contract or expressly assent thereto, and I find no basis for so construing the terms of the Convention.

c. On this point plaintiff relies on the language in Article 3 of the Convention, as follows:

"Article 3.

"(1) For the transportation of passengers the carrier must deliver a passenger ticket which shall contain the following particulars:

"(a) The place and date of issue;

"(b) The place of departure and of destination;

"(c) The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right, the alteration shall not have the effect of depriving the transportation of its international character;

"(d)   The name and address of the carrier or carriers;

"(e)   A statement that the transportation is subject to the rules relating to liability established by this convention.

"(2)   The absence, irregularity, or loss of the passenger ticket shall not affect the existence of the validity of the contract of transportation, which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability."

In particular, plaintiffs argue that the ticket defendant issued in this instance did not set forth the agreed stopping places as provided in Article 3 (1) (c).

Plaintiff contends that under subsection (2) the carrier·is, therefore; not entitled to avail itself of these provisions of the convention which limit its liability. However, subsection (2) merely denies limitation of liability where the carrier accepts a passenger without delivering a ticket to such passenger. Thus the question arises whether Article 3 (2) means that unless a ticket with all the particulars as set forth in Article 3 (1), is delivered, the carrier's liability is unlimited.

I believe the question can be best resolved by a reference to the terms of the Convention itself. Chapter·II of the treaty is entitled "Transportation Documents" which consist of Passenger Ticket, Baggage Check and Air Waybill. Article 4 provides for the issuance of a baggage check and sets forth the particulars it shall contain. Articles 5, 6, 7 and 8 provide for the issuance of an Air Waybill and the particular items it shall contain. However, Article 4 (4)[1] and Article 9[2] referring to the Baggage Check and Air Waybill, respectively, (while quite patently drafted to accomplish the same purpose with reference to the carriage of Baggage and Air Freight as Article 3 (2) does in the case ·of passengers) employs language obviously different than that in Article 3 (2). Article 4 (4) denies a carrier the right to avail itself of limitation or exclusion of liability not only for failing to. deliver a baggage check, but also if the check does not expressly set forth the particulars contained in (d), (f) and (h) of Article 4 (3). Article 9, relating to Air Freight, is similar in terms to Article 4 (4), for it also requires, in addition to a delivery of the Air Waybill, the inclusion of certain specified particulars. Article 3 (2) merely requires that the ticket be delivered to the passenger and thus clearly differs from Articles 4 (4) and 9. I must conclude that this omission or difference is most significant. For I cannot agree with plaintiffs' argument that Article 3 (2) intends that the ticket delivered contain the items set forth in Article 3 (1), when those who drafted the treaty were so explicit in this regard in Articles 4 (4) and 9.[3]

Further, while the ticket itself did not set forth the agreed stopping places, the ticket did provide that the "agreed stopping places" would be those set forth on the ticket and/or shown in the carrier's time table as scheduled stopping places on the passenger's route.

Therefore, the motion is denied.

---

1.  Article 4(4) "The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not· be entitled to avail himself of those provisions of the convention which exclude or limit his liability."

2.  Article 9. "If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability."

3.  Cf.   Anomalies In The Warsaw Convention Beaumont, the Journal of Air Law and Commerce; Vol. 14 #1, Northwestern University.