Grigorios GEORGAKIS, Plaintiff,

v.

EASTERN AIR LINES, INC., and United States of America, Defendants.

No. 75 C 1511.

United States District Court, E. D. New York.

April 21, 1981.

Kreindler & Kreindler by Milton G. Sincoff, New York City, for plaintiff.

Haight, Gardner, Poor & Havens by Walter E. Rutherford, Alan D. Reitzfeld, New York City, for defendant Eastern Air Lines, Inc.

## DECISION AND ORDER

BRAMWELL, District Judge.

The plaintiff, Grigorios Georgakis, has moved for summary judgment on defendant Eastern Air Lines, Inc.'s first affirmative defense to his complaint in this action for personal injuries that had its genesis in the June 24, 1975 crash of Eastern Air Lines Flight 66 at John F. Kennedy Airport. The affirmative defense in question

alleges that the air travel of Mr. Georgakis that gave rise to this action was international in character, thereby bringing this case within the reach of the provisions of the Warsaw Convention as supplemented by the Montreal Agreement ("Warsaw/Montreal").[1] If valid, this affirmative defense would limit the plaintiff's recovery in this action to $75,000 as against Eastern Air Lines.[2]

The facts relevant to the instant motion reveal that Mr. Georgakis, a Greek seaman, halted his duties aboard the S.S. Paros in June of 1975 in Baton Rouge, Louisiana.[3] Acting through its agent, Orion & Global Chartering Company ("Orion"), Mr. Georgakis' employer then took steps to secure Mr. Georgakis' passage to his home in Greece where he intended to vacation.

To this end, Mr. Georgakis was issued a plane ticket on June 23, 1975 that authorized him to travel on Delta Air Lines Flight 412 from Baton Rouge, La. to New Orleans, La., and on Eastern Flight 66 from New Orleans to John F. Kennedy Airport in the City of New York. For Mr. Georgakis' intended trip to Greece, Orion had contacted Olympic Airways at Kennedy Airport, requesting that a prepaid ticket be prepared for Mr. Georgakis. Such a ticket was prepared on June 24, 1975. This ticket, however, never was delivered to Mr. Georgakis. In fact, it eventually was cancelled.

The Delta/Eastern ticket used by Mr. Georgakis for his travel from Baton Rouge to New York contained the following language:

If the Passenger's journey involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and the Convention governs and in most cases limits the liability of carriers for death or personal injury and in respect of loss of or damage to baggage.

In 1975, however, Mr. Georgakis could not read English.[4]

Seated next to Mr. Georgakis on the ill-fated Eastern flight 66 was Efstratios Stratis, another Greek seaman who disembarked from the S.S. Paros in Baton Rouge, La. in June of 1975. Orion had booked the *identical* travel itinerary for Mr. Stratis as it did for Mr. Georgakis. Unlike Mr. Georgakis, however, Mr. Stratis chose to challenge Eastern's Warsaw/Montreal affirmative defense to his action in this Court prior to the trial of his case.

On August 3, 1979, this Court granted Mr. Stratis' motion for summary judgment on Eastern's Warsaw/Montreal affirmative defense. In so ruling, the Court stated that the relevant Warsaw/Montreal case law, as well as the tenor of the Convention provisions themselves, uniformly instruct that the critical inquiry on the issue of whether a passenger is in "international travel"[5] so

1. Specifically, defendant Eastern Air Lines, Inc.'s first affirmative defense alleges that

The plaintiff's travel herein involved international transportation subject to all the terms and conditions of the Warsaw Convention (49 Stat. 3,000 *et seq.*), as amended by the Hague Protocol thereto (if applicable) and as supplemented by the Montreal Agreement of May 4, 1966 (if applicable), and defendant Eastern Air Lines, Inc., therefore claims exemption from and limitation of liability in accordance with the terms and conditions of the said Warsaw Convention and/or Hague Protocol and/or Montreal Agreement.

2. On April 7, 1981, after a seven day trial, a jury awarded Mr. Georgakis one million dollars in damages for the personal injuries he sustained as a consequence of the June 24, 1975 crash of Eastern Air Lines Flight 66.

3. The facts related in the course of this Decision and Order have been culled from the Ex-

hibits submitted by defendant Eastern Air Lines, Inc. in connection with the instant motion, as well as those submitted in response to a similar motion in *Stratis v. Eastern Air Lines, Inc. et al*, 75 Civ. 1151 (HB). The parties have stipulated that Mr. Georgakis' testimony at his damage trial is to be considered part of the record relating to the instant motion, and that there are no issues of fact with respect to this motion. Transcript of April 14, 1981 proceedings in *Georgakis v. Eastern Air Lines, Inc. et al.* at 7, 9.

4. The parties have stipulated to this fact. *Id.* at 7.

5. The Convention defines "international transportation" as

any transportation in which, according to the contract made by the parties, the place of departure and the place of destination,

as to invoke Warsaw/Montreal "must focus upon the terms of the contract of carriage, which, in the case of a passenger, is evidenced by the passenger's ticket or tickets." Transcript of August 3, 1979 proceedings in *Stratis v. Eastern Air Lines, Inc., et al,* 75 Civ. 1151 (HB) (hereinafter referred to as "*Stratis*") at 15 (citing *Block v. Compagnie Nationale Air France,* 386 F.2d 323 (5th Cir. 1967), *cert. denied,* 392 U.S. 905, 88 S.Ct. 2053, 20 L.Ed.2d 1363 (1968); *Kelley v. Societe Anonyme Belge D'Exploitation,* 242 F.Supp. 129 (E.D.N.Y.1965); *Grey v. American Air Lines, Inc.,* 95 F.Supp. 756 (S.D.N.Y.1950), *aff'd* 227 F.2d 282 (2d Cir. 1955), *cert. denied,* 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956); *Egan v. Kollsman Instrument Corp.,* 21 N.Y.2d 160, 234 N.E.2d 199, 287 N.Y.S.2d 14 (1967), *cert. denied,* 390 U.S. 1039, 88 S.Ct. 1636, 20 L.Ed.2d 301 (1968); *Varkonyi v. S.A. Empress DeViacao Airea Rio Grandense,* 71 Misc.2d 607, 336 N.Y.S.2d 193 (Sup.Ct.N.Y.Cty.1972); *Burdell v. Canadian Pacific Airways Ltd.,* 17 Av.Cas. ¶ 17,356 (Ill.Cir.Ct.1969)). *See also*

> whether or not there be a break in the transportation or the transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power even though that power is not a party to this convention. Transportation without such an agreed stopping place between territories subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party shall not be deemed to be international for the purpose of this convention.
>
> Supp. to 49 U.S.C. § 1502 at Article 1(2). Such transportation, however, need not take place on only one airline. Under Article 1(3):
>
> > Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party.
>
> For a detailed discussion of the history and policy underlying Warsaw/Montreal, *see Winbourne v. Eastern Air Lines, Inc.,* 479 F.Supp.

*In re Air Crash in Bali, Indonesia,* 462 F.Supp. 1114 (C.D.Cal.1978). Since the only ticket held by Mr. Stratis at the time of the crash authorized purely domestic transportation between Baton Rouge, New Orleans and New York,[6] this Court concluded as a matter of law that he was not, in fact, proceeding in "international travel" when Eastern Flight 66 crashed.[7] *Stratis* at 16. Accordingly, the Court held that Eastern could not "slip into the protective garb" of Warsaw/Montreal in Mr. Stratis' action for personal injuries. *Id.* at 23.

In reaching this conclusion, the Court found Mr. Stratis' ultimate intention to return to Greece, as manifested by United States Immigration Laws and by the document prepared by Olympic Airways representatives, not to be determinative. *Id.* at 9. This finding dispelled Eastern's argument that Mr. Stratis' flight on Eastern should be treated as one prong of an "undivided" international journey commencing in Baton Rouge and ending in Greece.[8] *Id.* at

1130, 1139–1141 (E.D.N.Y.1979), *rev'd,* 632 F.2d 219 (2d Cir. 1980); *In re Air Crash at Bali, Indonesia,* 462 F.Supp. 1114 (C.D.Cal.1978).

**6.** The *Stratis* decision explicitly declined Eastern's invitation to characterize the omission of Athens on the ticket actually held by Mr. Stratis as "technical and insubstantial" so as to bring Mr. Stratis' action under the control of *Grey v. American Airlines,* 95 F.Supp. 756 (S.D.N.Y.1950), *aff'd,* 227 F.2d 282 (2d Cir. 1955), *cert. denied,* 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956). *Stratis* at 20–21.

**7.** This Court also found it significant that Mr. Stratis' domestic passage from Baton Rouge to New York was booked one day earlier than his international passage. *Stratis* at 13. Similarly, the Court observed that "since the international travel arrangements were not even communicated until after Mr. Stratis' domestic passage was secured and, perhaps, not until he was airborne, it cannot be said in the language of the *Egan [v. Kollsman Instrument Corp.]* court that Eastern accepted the passenger "under a contract for international transportation." 21 N.Y.2d at 168, 234 N.E.2d at 202, 287 N.Y.S.2d at 19. *Stratis* at 20.

**8.** Eastern's claimed status as a successive carrier in international travel under Article 1 § 3 of the Convention, *see* note 5 *supra,* was further offset by this Court's observation that, "since

19–20. Moreover, this Court refused to characterize the Olympic Airways document as a "ticket in fact," [9] *id.* at 17, adding that it more closely resembled a reservation which did not transpose Mr. Stratis' New Orleans-New York domestic travel into international travel. *Id.* at 22.

The August 3, 1979 *Stratis* decision alternatively concluded that Warsaw/Montreal could not be applied to Mr. Stratis' action in this Court due to the uncontroverted fact that Mr. Stratis never was delivered a plane ticket for international travel, and, as a result, never was notified in the context of an international ticket of the Warsaw/Montreal limitation of liability provisions "so as to [be afforded] a reasonable opportunity to take measures to protect himself" against these provisions. *Stratis* at 25–26.[10] Under Article 3, Section 2 of the Warsaw Convention, such delivery is a prerequisite to a proper invocation of Warsaw/Montreal by a carrier. *Mertens v. Flying Tiger Line, Inc.*, 341 F.2d 851 (2d Cir.), *cert. denied*, 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965).[11] *See Molitch v. Irish International Airlines*, 436 F.2d 42 (2d Cir. 1970).

In view of the fact that the travel arrangements at issue are identical for Mr. Stratis and Mr. Georgakis, it is readily apparent that the impact of the *Stratis* decision on the instant motion should be substantial. In this regard, the plaintiff has asked this Court to rule that the August 3, 1979 *Stratis* decision collaterally estops Eastern from litigating the issue of whether Warsaw/Montreal applies to this case.

■ The doctrine of collateral estoppel, or issue preclusion, recognizes "the need for finality of judicial decision and allow[s] litigants to put an end to further litigious activity as to matters already decided." Comment, *Preclusive Effect of State Adjudications In Section 1983 Actions*, 45 Brooklyn L.Rev. 1169, 1180 (1979). Generally, for collateral estoppel to attach under New York law

[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.

*Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 729, 298 N.Y.S.2d 955, 960 (1969). *See generally Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552

---

no contract for international transportation, as evidenced by a valid, issued ticket to this effect, ever came into existence, [*see* note 9 *infra*], Eastern can only be said to have been a successive carrier in *domestic*, not international travel." *Stratis* at 19–20.

**9.** The document "prepared by Olympic was never given a validation stamp nor was a date of issuance marked thereon." *Id.* at 16. Moreover, according to the deposition testimony of the revenue accounting manager of Olympic Airways, "validation is a 'necessity, its a must' to a viable ticket to travel." *Id.* at 17. As a result, this Olympic employee stated that "if one took th[e] ticket [prepared for Mr. Stratis] to the airport, he could not board a plane with it." *Id.*

**10.** In so ruling, this Court refuted Eastern's contention that *Ross v. Pan American Airways*, 299 N.Y. 88, 85 N.E.2d 880 (1949) dictated a contrary conclusion. *Stratis* at 26–29. In *Ross*, the New York Court of Appeals applied Warsaw/Montreal on the basis of an agency relationship between the plaintiff and a Mr. Abraham to whom a ticket providing for inter-

national travel had actually been delivered. 299 N.Y. at 96, 85 N.E.2d at 884. In *Stratis*, this Court found it "perfectly clear that [the Olympic] ticket was not physically picked up by or delivered to either Mr. Stratis himself or [Orion], his agent," and that "Mr. Stratis [n]ever ratified Orion's acts as he never boarded the Olympic flight and traveled pursuant to the ticket ordered for him by Orion." *Stratis* at 28.

**11.** Eastern also argued that the inclusion of the Warsaw/Montreal limitation of liability provision on Mr. Stratis' Delta/Eastern ticket was sufficient to meet the notice requirement of *Mertens*. On this score, the Court questioned "whether Mr. Stratis or anyone else for that matter, can be said to truly understand what this notice provision states," adding that "[w]hile the airlines' notice provision may certainly appear to be Greek to even the well-seasoned traveler, it certainly was not Greek to Mr. Stratis," a Greek seaman, whose deposition was conducted through a Greek interpreter. *Stratis* at 29.

(1979); *Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978).

■ Under the above test, the Court initially must ascertain whether the issues raised by Mr. Stratis' attack on Eastern's Warsaw/Montreal affirmative defense are identical to those involved in the instant motion. The mutuality of the travel itinerary of Mr. Stratis and Mr. Georgakis leads this Court to conclude that this prong of the *Schwartz* test has been met.[12] Eastern argues that the contrast between Mr. Stratis' deposition testimony that he intended to remain in New York for awhile before returning to Greece and Mr. Georgakis' trial and deposition testimony that he intended to return to Greece within a day of arriving in New York negates such a conclusion. This argument, however, easily is countered by this Court's holding in *Stratis* that the intent of Mr. Stratis to return to Greece was irrelevant to the Warsaw/Montreal issue in view of his possession of a ticket for domestic air travel at the time of the crash of Eastern Flight 66.

This Court also believes that Eastern had a "full and fair opportunity" to litigate the Warsaw/Montreal issue in *Stratis*. In lengthy briefs, reply briefs and oral argument, Eastern fully, fairly and vigorously contested the issue of whether Warsaw/Montreal applies to Mr. Stratis' case.

Finally, Eastern opposes the plaintiff's collateral estoppel claim on procedural grounds. Specifically, Eastern maintains that the interlocutory nature of the *Stratis* decision precludes resort to the doctrine of collateral estoppel. *Zdanok v. Glidden Company, Durkett Famous Foods Division*, 327 F.2d 944 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), however, lays this claim to rest. In *Zdanok*, the Second Circuit explicitly stated that

collateral estoppel does not require a judgment "which ends the litigation . . . and leaves nothing for the court to do but execute the judgment," *Catlin v. United States*, 324 U.S. 229 [65 S.Ct. 631, 89 L.Ed. 911] (1945), but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated. *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied*, 368 U.S. 986 [82 S.Ct. 601, 7 L.Ed.2d 524], and cases cited.

327 F.2d at 955. Quoting from the *Lummus* case, Judge Friendly, writing for the court in *Zdanok*, also related that

"Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

327 F.2d at 955 (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d at 89). *See also Usery v. International Organization of Masters*, 422 F.Supp. 1221 (S.D.N.Y.1976).

Under the authority of *Zdanok* and its progeny, this Court concludes that the interlocutory setting of the disposition of the Warsaw/Montreal issue in *Stratis* does not prevent that disposition from collaterally estopping Eastern from litigating the identical issue on identical facts in the instant case. In other words, this Court is of the opinion "that the litigation of [the applicability of Warsaw/Montreal to the situation presented by the facts in *Stratis* and the instant case] has reached such a stage that [this] Court sees no really good reason for permitting it to be litigated again." 297 F.2d at 89.[13]

■ In sum, therefore, on the basis of the legal pronouncements in *Stratis*, this Court holds that Warsaw/Montreal does not

---

12. In fact, the parties have agreed that the record in Mr. Georgakis' case "is identical to the record in the Stratis case with, of course, the exception that the names are different of the passengers . . . ." Transcript of April, 1981 Proceedings in *Georgakis v. Eastern Air Lines, Inc., et al.* at 3.

13. The "offensive" use of collateral estoppel implicated by the instant decision is permissible under the authority of *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979), where the United States Supreme Court "grant[ed] trial courts broad discretion to determine when [the doctrine] should be applied."

apply to Mr. Georgakis' action in this Court. This holding derives primarily from the fact that Mr. Georgakis possessed a ticket for purely domestic travel at the time of the crash of Eastern Flight 66. Moreover, this Court finds the alternative holding in *Stratis* that Warsaw/Montreal could not be applied to Mr. Stratis' case because he was not adequately notified of Warsaw/Montreal's limitation of liability provisions to be of extreme significance in Mr. Georgakis' case.[14] This is particularly so in light of the fact that Mr. Georgakis lacked the ability to read the notice pertaining to Warsaw/Montreal on his domestic ticket.[15]

Accordingly, it is hereby

ORDERED that the plaintiff's motion for summary judgment on defendant Eastern Air Lines, Inc.'s first affirmative defense is GRANTED.

---

**14.** *See* note 11 *supra.*

**15.** It appears that Mr. Stratis had a limited capability to read English in 1975. *Stratis* at 29; *see also* Exhibit D submitted by Eastern, p. 73.